WARD, Judge.
Glen R. Ether, Sr. was charged with three counts of distribution of cocaine. A twelve member jury found him guilty as charged on count one and guilty of at *690 tempted distribution of cocaine on the remaining two counts. The trial court sentenced Ether as a habitual offender to sixty years at hard labor for the distribution of cocaine conviction and 15 years at hard labor for each of the attempted distribution convictions, all sentences to run concurrently. Ether appeals his conviction and sentences arguing error in excluding alibi witnesses’ testimony, noncompliance with C.Cr.P. art. 894.1 and excessiveness of sentence. We affirm the conviction, reverse the sentence and remand for resentencing in compliance with C.Cr.P. art. 894.1.
As part of an undercover narcotics operation called “Operation Crackdown” various Gretna Police officers in cooperation with the Plaquemines Parish Sheriffs office purchased “crack” cocaine near JU’s bar in Empire, Louisiana.
Sergeant John Davis testified that on the night of March 16, 1989, he drove into the parking lot of JU’s Bar whereupon he was immediately approached by the defendant offering to sell him cocaine. Sergeant Davis purchased two “rocks” from the defendant and drove off. Approximately 10 minutes later Sergeant Davis met with Agent David Illg of the Plaquemines Parish Sheriff’s office. During this meeting Sergeant Davis viewed various photographs of drug suspects from which he identified Ether’s picture as the suspect who sold him the cocaine.
Officers John H. Schmidt and Kenneth Leagans testified that two nights after Sergeant Davis’ purchase they stopped on the shoulder of the highway across from JU’s Bar and each purchased one “rock” from the defendant. A short while later Officers Schmidt and Leagans met with Agent Illg and picked out Ether’s picture from a photo line-up, identifying him as the person who sold them the cocaine.
Ether offered the testimony of Sandra Riley as an alibi witness. Ms. Riley testified that Ether was with her at her home on the night of March 16. Further, that Ether accompanied her to Houston the next day to attend the wedding of mutual friends. Ms. Riley testified they stayed in Houston through March 19th. The defense offered a wedding program and motel receipt in support of Ms. Riley’s testimony.
Ether’s first assignment argues the Court erred in refusing to allow a second alibi witness to testify on his behalf.
On the morning of trial defense counsel informed the Court and the District Attorney that he wished to offer the testimony of Ms. Mackey as a second alibi witness. Counsel explained that he had just learned of the existence of this witness from the defendant. The State opposed the defense request claiming surprise and inability to meet the alibi defense. The defense countered the State’s argument of prejudice by pointing out that the State was well aware Ether would offer an alibi through Ms. Riley’s testimony. Moreover, he argues, there is no reason to believe the State would be prejudiced or would have offered the testimony of witnesses other than the three officers in order to place Ether at the crime scene.
Pursuant to C.Cr.P. art. 727 the Court excluded the testimony, reasoning that the name of this second alibi witness should have been furnished to the District Attorney when the defendant supplied the name of his first alibi witness, Ms. Riley.
In United States v. Myers, 550 F.2d 1036 (5th Cir.1977) the U.S. Fifth Circuit Court of Appeals enumerated the factors to be considered in determining whether the trial court properly exercised its discretionary power to exclude the testimony of an undisclosed witness under the Federal Rule of Criminal Procedure, 12.1. The court stated:
[A] district court should consider (1) the amount of prejudice that resulted from the failure to disclose, (2) the reason for nondisclosure, (3) the extent to which the harm caused by nondisclosure was mitigated by subsequent events, (4) the weight of the properly admitted evidence supporting the defendant’s guilt, and (5) other relevant factors rising out of the circumstances of the case. Cf., Advisory Committee Notes on rule 16 of the Proposed Rules of Criminal Procedure, 39 *691 FRD 69, 178 (1966). (footnote omitted). 550 F.2d at 1043.
Myers involved the failure of the government to comply with the requirements of the notice of alibi rule, but these factors are applicable to a case in which the defendant fails to comply. United States v. White, 583 F.2d 899 (6th Cir.1978); State v. Bias, 393 So.2d 677 (La.1981).
The Bias court found that the district court abused discretion in excluding the testimony of the defense witness because it applied the rule perfunctorily without considering those factors which would demonstrate “good cause”, permitting the witness to testify. The Court remanded the case for an evidentiary hearing to consider the enumerated factors.
In State v. Brown, 414 So.2d 689 (La. 1982), the State made written demand on defendant for notice of alibi witness six months prior to trial. The defense answered that it did not intend to produce alibi evidence. On the morning of the second day of trial, defense counsel notified the district attorney and the court that an alibi witness had been discovered by defendant’s mother. The defense gave the name of the witness and the substance of his testimony. The Louisiana Supreme Court held the trial court had not abused its discretion in refusing to allow the alibi testimony. The Court stated:
Significantly, in refusing to allow the introduction of Moffat’s testimony, the trial court rejected the defense argument that late disclosure of the alibi evidence was justified. The trial court pointed out that defendant’s mother had participated in his defense for well over a year and must have been earlier apprised of the need for alibi testimony. Moreover, the trial court noted that the state had presented the testimony of three credible witnesses definitely placing the defendant at the scene only minutes prior to Randolph’s murder. Id. at 698-699.
In this case, the record does not reflect that the State filed notice of written demand; however, the defense filed a notice of intent to call Sandra Riley as an alibi witness eight days before trial began. Arguing before the Court as an excuse in notifying the State of a second alibi witness on the morning of trial and as justification to allow the testimony, defense counsel explained to the Court that he had just recently taken on the case and therefore had not had much time to prepare. Furthermore, defense counsel argued that the defendant may not have been aware “of what he [was] required to inform [counsel].” The trial judge heard argument from both sides and commented that it appeared the defendant would have given the names of all alibi witnesses at the time he gave Ms. Riley’s name since at that time he undoubtedly knew the nature of his alibi. The Court denied the admission of the testimony under C.Cr.P. art. 727(C) which provides that if during trial a party learns the identity of a witness, he must notify the other party properly. In this case the defense does not contend that it only learned of the witness immediately before trial or after trial had commenced. Presumably defendant attended a wedding and not only Ms. Mackey and Ms. Riley but others as well including the bride and groom could testify for defendant, and hence not only was Ms. Mackey known to be an alibi witness but perhaps a score or more were known. Defense counsel has not shown good reason why others than Ms. Riley were not named nor subpoenaed to testify. The trial court heard argument on the relevant factors and did not apply the statute in an impermissible arbitrary fashion. The Court properly noted that defendant should have known the identity of all witnesses who could place him in Texas at the time of the crimes when he notified the State of Ms. Riley’s identity. Additionally, any testimony placing Ether in Texas on March 16 and 18 would have been cumulative to Ms. Riley’s testimony. Moreover, the jury heard the testimony of three credible police officers who identified Ether as the seller of drugs on three separate occasions. The trial court did not abuse its discretion in disallowing the testimony of Ether’s second alibi witness.
Ether’s second assignment of error assails the Court’s refusal to follow the *692 sentencing guidelines as set forth in C.Cr.P. art. 894.1. The State agrees with Ether’s position on this issue.
The trial judge gave Ether the maximum sentence allowable and determined that since he was sentencing Ether pursuant to the habitual offender law, he did not need to enumerate the art. 894.1 factors. The Judge erred. This Court has held:
Because maximum sentences are reserved for the worst offenders, a trial court’s compliance with the sentencing guidelines of LSA-C.Cr.P. art. 894.1 is absolutely essential where a near maximum sentence is imposed. Lacking evidence of the trial court’s compliance with C.Cr.P. art. 894.1, it is difficult if not impossible for this court to effectively review a claim of excessiveness of the sentence.
State v. Poole, 483 So.2d 1295, 1297 (La.App. 4th Cir.1986).
For the foregoing reasons we affirm the conviction; however, in view of the lower court’s error, we reverse the sentence and remand this matter for resentencing in compliance with the dictates of C.Cr.P. art. 894.1.
Because of the remand for sentencing, we need not at this time reach the issue of excessive sentence.
CONVICTION ' AFFIRMED; SENTENCE VACATED and REMANDED FOR RESENTENCING.