**The PEOPLE of the State of Colorado,
Plaintiff-Appellee,**

v.

**Charles HAMPTON,
Defendant-Appellant.**

**No. 82SA575.**

Supreme Court of Colorado,
En Banc.

Feb. 25, 1985.
Rehearing Denied March 25, 1985.

L. Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Nathan B. Coats, Chief, Crim. Appeals Asst. Atty. Gen., Denver, for plaintiff-appellee.

David Vela, Colorado State Public Defender, James England, Deputy State Public Defender, Denver, for defendant-appellant.

QUINN, Justice.

Charles Hampton, the defendant, appeals his convictions for aggravated robbery, conspiracy to commit aggravated robbery, and the commission of a crime of violence. He claims he was denied his statutory right to a speedy trial and that reversible error occurred when the trial court precluded him from eliciting testimony from two alibi witnesses because of his failure to comply with Crim.P. 12.1, which requires timely notification to the prosecuting attorney of the alibi defense and the names and addresses of alibi witnesses. We conclude that the defendant was not denied his statutory right to a speedy trial, but that the trial court failed to determine in accordance with appropriate standards whether there was good cause to admit the alibi evidence in spite of the defendant's noncompliance with the notification requirements. We therefore vacate the defendant's convic-

tions and remand the case for further proceedings.[1]

## I.

The defendant was charged in the District Court of El Paso County with aggravated robbery,[2] conspiracy to commit aggravated robbery,[3] and the commission of a crime of violence involving the use of a deadly weapon.[4] The charges arose out of the robbery of an employee of Furr's Cafeteria in Colorado Springs on August 14, 1977, by three masked gunmen. The defendant was arraigned on September 26, 1977, and entered a plea of not guilty.[5] Three days later, on September 29, 1977, the prosecuting attorney, pursuant to Crim.P. 12.1, served on the defendant a written notice specifying the time of the offenses as Sunday, August 14, 1977, between 9:00 p.m. and 10:00 p.m., and the place of the crime as Furr's Cafeteria, 2206 E. Pikes Peak Avenue, Colorado Springs, Colorado. The notice made demand on the defendant to serve on the prosecuting attorney a written statement designating the place where the defendant claimed to have been when the crimes were committed and the names and addresses of any alibi witnesses. The defendant did not respond to the prosecuting attorney's request, but instead filed a motion to suppress evidence.

On January 27, 1978, the trial court granted the defendant's motion to suppress certain evidence obtained from a search of an automobile. Five days later, on February 1, 1978, the People simultaneously filed with the clerk of the trial court a motion for rehearing and a notice of interlocutory appeal. On March 3, 1978, the trial court denied the petition for rehearing, whereupon the People filed an amended notice of interlocutory appeal with the clerk of the district court.

This court reversed the trial court's suppression order on September 25, 1978, and the same day a mandate was issued to the trial court. The defendant, however, requested that this court reconsider its opinion because of an alleged factual mistake. The mandate was recalled on October 23, 1978, and approximately three weeks later, on November 13, 1978, a new opinion was announced, again reversing the suppression order, *People v. Hampton*, 196 Colo. 466, 587 P.2d 275 (1978), and a mandate

---

1. Because the defendant raises a challenge to the constitutionality of Crim.P. 12.1, appellate jurisdiction is properly in this court. §§ 13–4–102(1)(b) and 13–4–110(1)(a), 6 C.R.S. (1973).

In addition to the issues relating to speedy trial and the constitutionality of Crim.P. 12.1, the defendant raises three other claims. He claims that Crim.P. 12.1, even if facially constitutional, was applied against him in an unconstitutional manner so as to preclude him from presenting evidence in defense of the charges as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and article II, sections 16 and 25 of the Colorado Constitution. Because we are vacating the judgment of conviction and remanding the case for further proceedings on whether there was good cause to admit the defendant's alibi evidence in spite of the defendant's noncompliance with the disclosure requirement of Crim.P. 12.1, it is unnecessary for us to consider the question of unconstitutional application. He also argues that the trial court erred in giving an instruction on recent possession of stolen property similar to the instruction disapproved by this court in *Wells v. People*, 197 Colo. 350, 592 P.2d 1321 (1979). Although we disapproved a similar instruction in *Wells*, we expressly limited our decision to prospective effect only. The defend-

ant's trial in this case occurred in 1978, prior to the decision in *Wells*. Our remand of this case for further proceedings renders it unnecessary to address the merits of the defendant's claim at this time. For similar reasons, it is also unnecessary to resolve the defendant's third claim, namely, that the denial of his request for a continuance based on defense counsel's representation that he was unprepared was a violation of due process of law. If, on remand, the trial court reinstates the defendant's conviction, the defendant's appeal may be reinstated for consideration of the trial court's ruling on the defendant's alibi evidence and any of the unresolved issues mentioned above.

2. § 18–4–302, 8 C.R.S. (1973).

3. §§ 18–2–201 and –206, 8 C.R.S. (1973).

4. § 18–12–108, 8 C.R.S. (1973).

5. The defendant was also charged with habitual criminality based on four prior felony convictions. § 16–13–101, 8 C.R.S. (1984 Supp.). Upon return of guilty verdicts to the other charges, the habitual criminal counts were dismissed on the prosecution's motion.

was issued returning jurisdiction to the trial court.

On October 16, 1978, after the first mandate had issued but before it had been withdrawn, the trial court, acting on the prosecution's request, scheduled the defendant's trial for November 27, 1978. Although the trial court and the prosecuting attorney had apparently calculated this date to be within the statutory speedy trial period, defense counsel had not determined as of that date how much time, if any, remained on the statutory speedy trial term. Defense counsel, offering to waive the defendant's right to a speedy trial, requested the court to set the trial in January 1979, because he needed more time to prepare a defense. When the court refused the request for a later trial date, defense counsel expressly stated that his previous offer should not be construed as a waiver of the defendant's right to a speedy trial. Subsequent to the trial setting, the defendant filed a motion to dismiss on grounds that his statutory right to a speedy trial had been denied. This motion was heard and denied by the trial court on November 27, 1978, prior to the commencement of jury selection.

Approximately twelve days prior to trial, defense counsel learned, apparently for the first time, of three potential alibi witnesses. Because the defense investigator had difficulty in contacting and interviewing these witnesses, it was not until November 24, 1978, that defense counsel orally notified the district attorney that he might present an alibi defense at trial. On November 28, while jury selection was still in progress,[6] defense counsel served on the prosecuting attorney and filed with the court a written notice of alibi. The notice stated that the defendant was at 5173 Sherman Street and 2909 Ivanhoe Street, Denver, Colorado, during the period of time designated in the prosecution's specification of time and listed the names and addresses of two alibi witnesses whom the defendant intended to call at trial. Three days later, during the prosecution's case, defense counsel disclosed the name and address of a third alibi witness who had apparently been interviewed by the defense investigator on the preceding day.

At the close of the People's case, the prosecuting attorney requested the court to exclude the defendant's alibi evidence on the ground that defense counsel had failed to inform the prosecuting attorney, as required by Crim.P. 12.1, of the names and addresses of alibi witnesses within a reasonable time after service on the defendant of the prosecution's specification of the time when and the place where the defendant committed the crimes charged. It was defense counsel's position that his notification to the prosecuting attorney upon making the decision to present the alibi defense satisfied the requirements of Crim.P. 12.1. In considering the prosecution's motion, the trial court received testimony, outside the presence of the jury, from the defense investigator concerning the difficulty he experienced in contacting the alibi witnesses. The prosecuting attorney, upon questioning by the trial judge, acknowledged that his investigator had recently conducted an interview of all three alibi witnesses. At the conclusion of the hearing, the trial court summarily granted the prosecution's motion to exclude the defendant's alibi evidence, but gave no reasons for its ruling and did not state of record what factors, if any, it considered in applying the exclusion sanction.

The defendant presented no evidence in his defense and was convicted of aggravated robbery, conspiracy to commit aggravated robbery, and a crime of violence. He was sentenced to a term of ten to fifteen years for aggravated robbery and a concurrent indeterminate term not to exceed ten

---

**6.** On November 27, 1978, the first day of the scheduled trial, the defendant filed a motion in the United States District Court for removal of the case to the federal court pursuant to 28 U.S.C. § 1443(1) (1982). The motion was denied on the same day, and jury selection commenced in the District Court of El Paso County on the following day, November 28, 1978.

years for conspiracy to commit aggravated robbery.[7] This appeal followed.

## II.

We first address the defendant's speedy trial claim. He essentially argues that, excluding from the six month statutory period any legitimate period of delay caused by the prosecution's interlocutory appeal, the commencement of the trial on November 27, 1978, was in violation of his statutory right to a speedy trial, with the result that any judgment of conviction entered in this case must be reversed. We reject the defendant's argument.

Section 18-1-405(1), 8 C.R.S. (1973), states that, except as otherwise provided in that section, the defendant must be tried within six months after the entry of a not guilty plea or the pending charges must be dismissed with prejudice. Subsection (6)(b), which is critical to the issue raised here, expressly excludes from the six month speedy trial term "[t]he period of delay caused by an interlocutory appeal whether commenced by the defendant or by the prosecution." Since the defendant in this case was arraigned on September 26, 1977, the statutory six month period would have expired on March 27, 1978, in the absence of any delay caused by the prosecution's interlocutory appeal.[8] There is no dispute in this case that the interlocutory appeal filed by the prosecution did toll the running of the statutory six month period. The questions raised by the defendant center on the precise date on which the tolled period commenced and the time properly includable within the tolled period.

The defendant's argument, as we perceive it, proceeds as follows: (1) the prosecution's filing of a motion for rehearing with the trial court on February 1, 1978, suspended the effect of the interlocutory appeal until March 3, 1978, when the trial court denied the petition for rehearing and the prosecution filed its amended notice of appeal, with the result that there were only twenty-four days then remaining on the statutory speedy trial term upon final resolution of the interlocutory appeal; (2) in addition to the tolled period from March 3 to September 25, 1978, when this court issued its initial mandate after reversal of the trial court's suppression order, the only other period of delay properly includable within the tolled period is the period from October 23 to November 13, 1978, when this court had under advisement the defendant's motion to reconsider the judgment reversing the trial court's order of suppression; and (3) because there were only twenty-four days remaining on the speedy trial period when the People's amended notice of interlocutory appeal was filed on March 3, 1978, the statutory six month period expired long before November 27, 1978, even if the period of October 23 to November 13, 1978, is excluded from the computation. The defendant's argument, however, is built on the erroneous assumption that the filing of the prosecution's notice of interlocutory appeal on February 1, 1978, neither divested the trial court of jurisdiction over this case nor tolled the speedy trial period.

▇▇▇ The filing of a notice of appeal, unless otherwise specified by statute or rule, divests the trial court of jurisdiction "to issue further orders in the case relative to the order or judgment appealed from."

---

**7.** Although the jury returned verdicts on December 1, 1978, the defendant requested a delay in sentencing, and the trial court did not impose sentence on the defendant until June 17, 1980.

**8.** § 2-4-108, 1B C.R.S. (1980), establishes the following rules for the computation of time:
(1) In computing a period of days, the first day is excluded and the last day is included.
(2) If the last day of any period is a Saturday, Sunday, or legal holiday, the period is extended to include the next day which is not a Saturday, Sunday, or legal holiday.
(3) If a number of months is to be computed by counting the months from a particular day, the period ends on the same numerical day in the concluding month as the day of the month from which the computation is begun, unless there are not that many days in the concluding month, in which case the period ends on the last day of that month.
See also Crim.P. 45(a). Because March 26, 1978, was a Sunday, the six month period would not have expired until Monday, March 27, 1978.

*People v. Dillon,* 655 P.2d 841, 844 (Colo. 1983); *see also Brooke v. People,* 139 Colo. 388, 339 P.2d 993 (1959). C.A.R. 4.1(b) requires an interlocutory appeal to be filed within ten days following the entry of a suppression order, and a motion for rehearing is not a condition precedent to the filing of the appeal. The 1978 version of C.A.R. 4.1(c), which is applicable to this case, stated that an appeal was filed when the prosecution, within the ten day period following a suppression ruling, files "the notice of appeal in duplicate with the clerk of the trial court," who was then required to immediately forward the notice to the clerk of the supreme court.[9] Thus, as of February 1, 1978, when the prosecution filed the first notice of interlocutory appeal with the clerk of the district court, the trial court was divested of jurisdiction to act on the People's motion for a rehearing in the absence of a limited remand from this court. *See, e.g., People v. District Court,* 638 P.2d 65 (Colo.1981); *People v. Jones,* 631 P.2d 1132 (Colo.1981).

■ There were fifty-four days remaining on the unexpired term of the six month period when the interlocutory appeal was filed. The delay caused by the interlocutory appeal ended, albeit temporarily, with this court's issuance of a mandate to the trial court on September 25, 1978. Although the time remaining under the speedy trial statute as of September 25, 1978, dictated that the trial was to commence within the fifty-four remaining days, that is on or before November 18, 1978, the trial court erroneously set the defendant's trial for November 27, 1978. The defendant's right to a speedy trial, however, was not denied simply because the trial setting was beyond the six month period. By the express terms of section 18–1–405(1), a defendant's statutory right to a speedy trial is denied only when he is "not brought to trial on the issues raised by the ... information ... within six months from the date of the entry of a plea of not guilty," and

not by the mere setting of a case beyond the statutory period.

■ The speedy trial period was again tolled on October 23, 1978, when, pursuant to the defendant's extraordinary request, this court withdrew its initial mandate. As of that date, there were twenty-six days remaining on the speedy trial period, and the trial court again lost jurisdiction over the case and did not regain it until a new mandate was issued on November 13, 1978. Excluding the period during which the trial court lost jurisdiction over the case due to the recall of the mandate, there were twenty-six days yet remaining on the speedy trial period when the trial court regained jurisdiction on November 13, 1978. Since the trial date of November 27, 1978, was well within this twenty-six day period, the defendant was not denied his statutory right to a speedy trial.

### III.

We turn to the defendant's challenge to the trial court's exclusion of his alibi defense. The trial court's ruling was predicated on Crim.P. 12.1, which provides as follows:

> The prosecuting attorney may serve upon the defendant within a reasonable time before the trial a written notice specifying with reasonable certainty the contention of the prosecuting attorney as to the time when and the place where the defendant committed the offense charged. In that event the defendant, if he intends to introduce evidence that he was at a place other than that specified, shall serve upon the prosecuting attorney within a reasonable time after service of the prosecuting attorney's notice a statement in writing specifying the place where he claims to have been and the names and addresses of the witnesses he will call to support the defense of alibi. Upon receiving this statement, the

9. C.A.R. 4.1(c) was amended on September 23, 1983, with an effective date of January 1, 1984, to provide as follows: "[t]o file an interlocutory appeal the state, within the time fixed by this Rule, shall file the notice of appeal with the clerk of the appellate court with an advisory copy served on the clerk of the trial court."

prosecuting attorney shall advise the defendant of the names and addresses of any additional witnesses who may be called to refute such alibi within a reasonable time after their identity becomes known. Neither the prosecuting attorney nor the defendant shall be permitted at the trial to introduce evidence inconsistent with his specification, unless the court for good cause and upon just terms permits the specification to be amended. If a defendant fails to make the specification required by this section, the court shall exclude evidence in his behalf that he was at a place other than that specified by the prosecuting attorney unless the court is satisfied upon good cause shown that such evidence should be admitted.[10]

The defendant argues that Crim.P. 12.1 is facially unconstitutional because it infringes upon an accused's right to present a defense in violation of the Compulsory Process and Due Process Clauses of the United States and Colorado Constitutions, U.S. Const. amends. VI and XIV; Colo. Const. art. II, secs. 16 and 25, and that, even if the rule is constitutional, he either complied with the rule or there was good cause to admit the evidence in spite of his noncompliance. Although we reject the defendant's constitutional challenge to Crim.P. 12.1 and further conclude that the defendant failed to comply with the disclosure provisions of the rule, we nonetheless vacate the judgment because the trial court in imposing the exclusionary sanction failed to apply appropriate legal standards in determining whether there was good cause to admit the alibi evidence notwithstanding the defendant's noncompliance.

**10.** Crim.P. 12.1 is almost identical to section 16–7–102, 8 C.R.S. (1978), which was originally enacted as part of the Colorado Code of Criminal Procedure with an effective date of July 1, 1972. Ch. 44, sec. 1, art. 7, § 39–7–102, 1972 Colo.Sess.Laws 190, 220. The only difference between Crim.P. 12.1 and section 16–7–102 is that the statute expressly extends the exclusion sanction to the prosecution's rebuttal alibi witnesses, and not merely to the defendant's alibi witnesses as does the rule. The last sentence of the statute states:

## A.

We first address the defendant's claim that Crim.P. 12.1 is facially unconstitutional as violative of his right to present evidence in defense of the charges, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article II, sections 16 and 25 of the Colorado Constitution. In *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), the United States Supreme Court upheld a Florida alibi rule against the claim that it deprived an accused of his due process right to a fair trial and violated the privilege against self-incrimination. The Florida rule required a defendant, not less than ten days prior to trial or such other time as the court directed, to file and serve upon the prosecuting attorney a written notice specifying his intention to claim the defense of alibi, the place where he claimed to have been at the time of the alleged offense, and the names and addresses of alibi witnesses whom he proposed to call at trial. The Florida rule also contained an exchange provision requiring the prosecuting attorney to file and serve upon the defendant, not less than five days after the receipt of the defendant's witness list, the names and addresses of the witnesses whom the prosecution proposed to offer in rebuttal to discredit the defendant's alibi. The sanction for failure to comply was the exclusion, in the trial court's discretion, of the alibi evidence, except the defendant's own testimony, or, in the case of the state's noncompliance, the exclusion of the state's evidence offered in rebuttal to the alibi defense.

If either the defendant or the prosecuting attorney fails to file and cause to be served the statement containing the names and addresses of alibi witnesses or rebuttal witnesses required by this section, the court shall exclude evidence offered in support of the defense of alibi or in rebuttal thereof, as the case may be, unless the court finds upon good cause shown that such evidence should be admitted in the interest of justice.

Our analysis of the disclosure obligation and the exclusion sanction of Crim.P. 12.1 applies equally to section 16–7–102.

The Supreme Court had little difficulty with Williams' due process claim:

> Given the ease with which an alibi can be fabricated, the State's interest in protecting itself against an eleventh-hour defense is both obvious and legitimate.... The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played. We find ample room in that system, at least as far as "due process" is concerned, for the instant Florida rule, which is designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence.

399 U.S. at 81–82, 90 S.Ct. at 1896 (footnote omitted).

Nor did the Court find any merit in the argument that the alibi rule violated the Fifth Amendment privilege against self-incrimination by requiring an accused to provide the prosecution in advance of trial with information that may be used to obtain a conviction. Although a defendant in a criminal trial, the Court noted, is frequently faced with the predicament of either presenting no evidence whatever or testifying himself and perhaps calling other witnesses, thereby revealing their identity and subjecting them to cross-examination that might furnish the state with a lead to incriminating rebuttal evidence, such a hard choice "has never been thought an invasion of the privilege against compelled self-incrimination." 399 U.S. at 84, 90 S.Ct. at 1897. The constraints generated by the Florida alibi rule were similarly viewed by the Court as pressures associated only with the timing of disclosure—that is, the rule merely required an accused to divulge at an earlier date information that he intended to ultimately divulge at trial. Nothing in the Fifth Amendment, the Court concluded, "entitles a defendant as a matter of constitutional right to await the end of the State's case before announcing the nature of his defense." 399 U.S. at 85, 90 S.Ct. at 1898.

We believe the Supreme Court's decision in *Williams* answers much of the defendant's facial challenge to Crim.P. 12.-1. To be sure, the right of an accused to call other witnesses in defense of the charge, like the right to testify in his own defense, is a fundamental component of due process of law. *E.g., Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973); *Washington v. Texas,* 388 U.S. 14, 17–19, 87 S.Ct. 1920, 1922–23, 18 L.Ed.2d 1019 (1967); *People v. Curtis,* 681 P.2d 504, 509–11 (Colo.1984); *Hendershott v. People,* 653 P.2d 385, 391 (Colo.1982), *cert. denied,* 459 U.S. 1225, 103 S.Ct. 1232, 75 L.Ed.2d 466 (1983). The Colorado rule, however, neither prevents the accused from exercising his right to present a defense nor restricts the nature or content of his alibi evidence. What Crim.P. 12.1 does is to condition the presentation of alibi evidence on a timely pretrial disclosure, so that the surprise and prejudice incident to the eleventh-hour introduction of the alibi defense into the trial may be avoided and the reliability of the factfinding process correspondingly enhanced.

Preconditions to the exercise of a right are not unknown to the criminal law and, when reasonable in nature, do not constitute an abridgement of that right. The defense of insanity, for example, must generally be pled at the time of arraignment. Crim.P. 11(e)(1). A motion challenging the constitutionality of a statute upon which a charge is based must be made within twenty days following arraignment. Crim.P. 12(b)(2) and (3). A motion challenging the array of prospective jurors must be filed prior to the swearing in of the jury selected to try the case. Crim.P. 24(c). In a fashion similar to the alibi rule, a court may require a defendant to inform the prosecuting attorney of any defense intended to be used at trial and the names and addresses of witnesses to be called in support thereof. Crim.P. 16, Part II(c); *see People v. District Court in and for Larimer County,* 187 Colo. 333, 531

P.2d 626 (1975). Finally, by way of example, a motion to suppress evidence must generally be filed and heard prior to trial. Crim.P. 41(e). In view of the obvious purpose of Crim.P. 12.1, we believe that the requirement of accelerated disclosure no more abridges the defendant's right to call witnesses or to testify in his own defense than did the accelerated disclosure in *Williams* violate the accused's Fifth Amendment privilege against self-incrimination.[11]

■ Nor, in our view, does the exclusion sanction of Crim.P. 12.1 render the rule facially unconstitutional. Crim.P. 12.1 does not mandate the automatic exclusion of an accused's alibi witnesses upon noncompliance with the disclosure requirement, but rather vests the trial court with discretion to permit the witnesses to testify, notwithstanding the defendant's noncompliance, upon a showing by the defendant of good cause to admit the alibi evidence. The possibility of the sanction comes into play only after there has been a determination that the defendant has violated the disclosure requirement of Crim.P. 12.1. The implementation of pretrial discovery requirements would be a virtual impossibility without reasonable sanctions to redress violations of discovery obligations. Excluding the testimony of a defendant's nondisclosed or untimely disclosed alibi witnesses is, in the absence of a showing by the defendant of good cause to admit the evidence in spite of his breach of the disclosure obligation, a manifestly reasonable sanction. While the imposition of the exclusion sanction in a particular case might raise an issue of unconstitutional application, we are satisfied that the discretionary sanction of exclusion does not constitute a per se violation of an accused's right to present a defense. *See, e.g., State v. Dodd,* 101 Ariz. 234, 418 P.2d

571 (1966); *State v. Roberts,* 226 Kan. 740, 602 P.2d 1355 (1979); *State v. Smith,* 88 N.M. 541, 543 P.2d 834 (1975); *State ex rel. Simos v. Burke,* 41 Wis.2d 129, 163 N.W.2d 177 (1968).

We recognize that Crim.P. 12.1, unlike the alibi rule in *Williams,* does not expressly exempt the defendant's own testimony from the exclusion sanction upon failure to comply with the disclosure requirement. We see no reason, however, to extend either the disclosure requirement or the exclusion sanction to an accused's alibi testimony. The prospect that a defendant will testify in his own defense is always present in a criminal case. The accused's election to testify, therefore, should come as no surprise to the prosecution. The same cannot be said of other alibi witnesses. Without pretrial disclosure of the names and addresses of these other witnesses, the prosecution would have no reason to anticipate their testimony at trial. The disclosure requirement of Crim.P. 12.1 is designed to address this latter situation by providing the prosecution with adequate means to evaluate and meet the alibi testimony of nondefendant witnesses, just as the exclusion sanction is designed to compel compliance with this disclosure obligation.

■ Although courts have reached different results on the propriety of excluding an accused's alibi testimony for failure to list the accused as an alibi witness, we agree with the reasoning of the court in *Alicea v. Gagnon,* 675 F.2d 913, 924 (7th Cir.1982). In holding that Wisconsin's exclusion sanction was unconstitutionally applied to the accused's alibi testimony, the Seventh Circuit Court of Appeals stated.

11. Crim.P. 12.1 has the merit of providing added flexibility to a defendant relying on an alibi defense by requiring disclosure not within a time certain after arraignment but within "a reasonable time after service" of the prosecuting attorney's specification of time and place. Furthermore, unlike the alibi rule struck down on due process grounds in *Wardius v. Oregon,* 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), the Colorado rule imposes a reciprocal obligation on the prosecution to provide the defense with the names and addresses of witnesses who may be called to refute the alibi. Finally, as we discuss in Part IIIC, Crim.P. 12.1 contains an added safeguard, in that even when a defendant fails to make disclosure mandated by the rule, the court may nonetheless permit the defendant to offer alibi evidence "upon good cause shown that such evidence should be admitted."

The principal reason for notice rules ... is prevention of surprise to the state, not punishment of the accused for mere technical errors or omissions. In this situation it is difficult to see how the government can claim surprise. As an essential part of its case, the state must prove a defendant's presence during the commission of an alleged crime, proof which invariably requires pretrial investigation and preparation. Armed with this evidence, the state is in a formidable position to refute a defendant's unexpected alibi testimony, particularly where, as here, such testimony is uncorroborated by other defense witnesses. We doubt that a defendant's unsupported explanation will overcome testimony by state witnesses placing him at the scene of the crime. Thus, the prejudice to the state's case from allowing a defendant to exercise his constitutional right to testify is *de minimis* and does not warrant complete preclusion.

In addition, we do not consider Wisconsin's interest in facilitating the orderly administration of justice sufficiently important to override the accused's right to tell his version of the story. If a defendant takes the stand and denies his presence during the crime, the state can readily rebut his denial on cross-examination by asking the defendant to address the state's evidence. If for some reason the state considers its evidence significantly weakened by a defendant's unsubstantiated testimony, it should seek a continuance for further investigation, rather than seeking total preclusion of the defendant's testimony. It is unlikely, however, that such defense testimony would ever have enough impact to necessitate a continuance unless the defendant's explanation was so persuasive that his innocence became apparent, in which case the proper measure would be to end the trial, not to continue it.

*Contra, e.g., Burke,* 41 Wis.2d 129, 163 N.W.2d 177; *Bowen v. State,* 263 Ind. 558, 334 N.E.2d 691 (1975).

In summary, we conclude Crim.P. 12.1 does not facially abridge an accused's right to present evidence in defense of the charges, that the disclosure requirement does not apply to the defendant as an alibi witness, and that the exclusion sanction is not applicable to the defendant's alibi testimony.

B.

We next consider whether the trial court erred in finding that the defendant failed to comply with the disclosure requirements of Crim.P. 12.1. The defendant urges us to interpret the rule so as to require disclosure only after an accused has formed the intent to use the alibi defense at trial. We reject the defendant's proposed construction of the disclosure obligation and conclude that his disclosure of his alibi defense and witnesses was not timely made.

■ As the Supreme Court observed in *Williams,* "[g]iven the ease with which an alibi can be fabricated," the prosecution has both an obvious and legitimate interest in protecting itself against the assertion of this defense at that point in the criminal process when there is little or no time to investigate the alibi and to assemble rebuttal witnesses. 399 U.S. at 81, 90 S.Ct. at 1895. For this reason, Crim.P. 12.1 expressly references the defendant's obligation of timely disclosure to the prosecution's service of the specification of time and place and not, as argued by the defendant, to the time when the defendant actually decides to present alibi testimony at trial. Thus, as we construe the rule, once the prosecuting attorney serves a specification of time and place, then as long as the defendant is aware of the alibi defense and alibi witnesses and desires to preserve his option to present this evidence at trial, he is under a continuing obligation to serve on the prosecuting attorney, within a reasonable time after service of the prosecution's specification, a notice of alibi and the names and addresses of the alibi witnesses.

■ This obligation of disclosure required by Crim.P. 12.1 is an eminently reasonable one. A defendant in most cases should have little trouble in recalling where

he was during the period of time designated in the prosecution's specification and, after a modest effort, should be able to determine the names and addresses of those persons who can testify to his whereabouts during the critical time period in question. Unless there is a showing of unusual circumstances that prevented an earlier disclosure, a defendant's failure to respond to the prosecution's specification for several months, or until the actual commencement of trial, can only be viewed as a violation of the "reasonable time" requirement of the rule. The defendant, of course, retains the freedom to give notice of the alibi defense or not. If he elects to give notice and subsequently decides not to offer alibi evidence at trial, the notice of alibi may not be the subject of examination or comment at trial. If the defendant chooses not to disclose the alibi defense to the prosecution, he does so at the risk of being precluded from offering any alibi evidence at trial.

 The construction of the defendant's disclosure obligation that we herein adopt is calculated to achieve the purposes intended by Crim.P. 12.1: to provide the prosecution with information necessary to an adequate preparation for trial; to reduce the possibility of surprise and concomitant delays at trial; and to enhance the overall reliability of the factfinding process. *Wardius v. Oregon,* 412 U.S. 470, 474, 93 S.Ct. 2208, 2211, 37 L.Ed.2d 82 (1973); *Williams,* 399 U.S. at 81, 90 S.Ct. at 1895. The defendant's proposed construction would permit an accused to delay any and all disclosure obligations until such time as the state rested its case, for it is only at that time that the defendant can truly say that he intends to introduce alibi evidence at trial. Such a construction would exacerbate the very problems that Crim.P. 12.1 was intended to eliminate.[12]

 We turn now to whether the defendant complied with Crim.P. 12.1 in this case. Although the determination of a "reasonable time" within which to make an alibi disclosure will vary with the circumstances of each case, the primary consideration is the objective length of time transpiring between the service of the prosecution's specification of time and place and the defendant's response thereto. Here, the defendant delayed making any response to the prosecution's specification for over a year. The defense investigator testified that he was first requested by defense counsel to contact alibi witnesses two weeks prior to the trial date of November 27, 1978. So far as the record reflects, the defendant apparently placed this case on "hold" until the prosecution's interlocutory appeal was finally resolved by this court on November 14, 1978. The filing of an interlocutory appeal, however, provides no excuse for failure to timely comply with pretrial discovery obligations. We find nothing of record to support the defendant's claim that serving the prosecuting attorney during the trial itself with a written specification of the alibi defense and the names and addresses of alibi witnesses was a disclosure made within a reasonable time within the intendment of Crim.P. 12.1.

### C.

 We are left then with the propriety of the court's exclusion sanction. The failure to comply with the time requirements of Crim.P. 12.1 does not result in an automatic exclusion of alibi evidence. Rather, Crim.P. 12.1 permits the court to exercise discretion in allowing the defendant's alibi evidence notwithstanding noncompliance with the disclosure requirements as long as the defendant makes a good cause showing "that such evidence

---

12. In response to the trial court's inquiry as to the reasons why the defendant did not make an earlier disclosure of the alibi defense to the prosecuting attorney, defense counsel responded:

> I had no intent to call any of these people, no firm intent to call them, until Monday or Tuesday of this week, and I tried to give [the prosecution] notice, the minute I made up my mind that I was going to call these people.

This response, we believe, points up precisely why the defendant's proposed construction of Crim.P. 12.1 would achieve none of the purposes intended by the timely notice obligation.

should be admitted." The record in this case, however, does not permit us to determine whether the trial court properly exercised or improperly abused its discretion in imposing the exclusion sanction of ·Crim.P. 12.1.

The exclusion of relevant and competent evidence offered in defense of a criminal charge is a severe sanction, implicating as it does the defendant's right to present a defense and ultimately the right to a fair trial. *See, e.g., Chambers,* 410 U.S. at 302, 93 S.Ct. at 1049; *Washington,* 388 U.S. at 19, 87 S.Ct. at 1923; *Curtis,* 681 P.2d at 509–11; *Hendershott,* 653 P.2d at 391; *People v. Moore,* 36 Colo.App. 328, 539 P.2d 489 (1975). While the sanction of exclusion remains, within the limits of constitutional application, a matter of judicial discretion, several courts have held that, because of the significance of the rights at stake, the exercise of that discretion must be properly informed by an adequate inquiry into and consideration of the circumstances underlying the defendant's noncompliance and the effect of the exclusion sanction on both the prosecution and the defense. *See, e.g., State v. Smith,* 123 Ariz. 243, 599 P.2d 199 (1979); *Slaughter v. State,* 330 So.2d 156 (Fla.App.1976); *State v. Christensen,* 323 N.W.2d 219 (Iowa 1982); *State v. Bias,* 393 So.2d 677 (La. 1981); *State v. Merritt,* 396 Mich. 67, 238 N.W.2d 31 (1976); *State v. Mitchell,* 149

N.J.Super. 259, 373 A.2d 700 (1977). The factors pertinent to the court's ultimate determination include the following: the reason for and the degree of culpability associated with the failure to timely respond to the prosecution's specification of time and place;[13] whether and to what extent the nondisclosure prejudiced the prosecution's opportunity to effectively prepare for trial;[14] whether events occurring subsequent to the defendant's noncompliance mitigate the prejudice to the prosecution;[15] whether there is a reasonable and less drastic alternative to the preclusion of alibi evidence;[16] and any other relevant factors arising out of the circumstances of the case. *E.g., Smith,* 123 Ariz. 243, 599 P.2d 199; *Christensen,* 323 N.W.2d 219; *Bias,* 393 So.2d 677; *Merritt,* 396 Mich. 67, 238 N.W.2d 31. In ruling on a motion to exclude defense alibi evidence, the trial court should identify on the record those factors which it considers critical to its ultimate determination that there is or is not good cause to permit the alibi evidence in spite of the defendant's noncompliance with the disclosure requirement. Only in this way can there be meaningful appellate review of the trial court's ruling.

In this case the court failed to give any reasons for its exclusion of the alibi evidence, and we are therefore unable to determine whether the court properly

13. In assessing the reason for the defendant's noncompliance with the disclosure provisions, we note that an accused will ordinarily know whether he has an alibi defense or not, and, if such a defense exists, the identity of his alibi witnesses. In the absence of some showing establishing the reason for the defendant's unawareness of the identity or location of alibi witnesses, failure to disclose an alibi defense and witnesses until a substantial period of time following service of the prosecution's notice will not be a mitigating circumstance.

14. The question of prejudice to the prosecution involves such considerations as: whether the prosecution was already aware of the alibi witnesses; whether the prosecution has been able to interview the alibi witnesses; whether the belated disclosure or nondisclosure was such as to preclude the discovery of rebuttal witnesses who might otherwise be available; and what

effect the belated disclosure or nondisclosure will likely have on the prosecution's ability to conduct an effective cross-examination of the alibi witnesses.

15. With respect to events that might serve to mitigate the prejudicial effects of a belated disclosure, the court should determine how far in advance of trial the defendant did disclose his alibi defense and whether the prosecution was able to interview the alibi witnesses and conduct its own investigation prior to the scheduled presentation of the alibi evidence.

16. In some cases, the granting of a brief continuance, which is certainly a less drastic alternative to exclusion, might effectively eliminate any prejudice to the prosecution. The feasibility of this alternative, however, is by no means conclusive of the exclusion issue, but is simply one factor for the court to consider.

exercised its discretion in so ruling. We believe the appropriate procedure under these circumstances is to vacate the judgment of conviction and to remand the case to the trial court for a proper consideration of the factors enumerated above in determining whether there was good cause to admit the alibi evidence notwithstanding the defendant's failure to timely disclose his alibi defense and alibi witnesses to the prosecuting attorney. *See People v. Shaver,* 630 P.2d 600 (Colo.1981); *Huguley v. People,* 195 Colo. 259, 577 P.2d 746 (1978); *Compton v. People,* 166 Colo. 419, 444 P.2d 263 (1968); *Bias,* 393 So.2d 677. The trial court, in its discretion, may permit the parties to present additional evidence on this issue. If the trial court determines that the defendant's alibi evidence was properly excluded from the trial, then the judgment of conviction should be reinstated and the case may be certified to this court for review of the court's ruling and other issues raised by the defendant that need not be addressed at this time. *See* note 1, *supra.* If, on the other hand, the trial court determines that there was good cause to permit the alibi evidence notwithstanding the defendant's noncompliance with Crim.P. 12.1, the defendant should be granted a new trial.

The judgment is accordingly vacated and the cause is remanded to the district court for further proceedings in accordance with the views herein expressed.

ROVIRA, J., concurs in part and dissents in part.

ERICKSON, C.J., joins in the concurrence and dissent.

ROVIRA, Justice, concurring in part and dissenting in part:

I concur with all of the opinion except Part III, C, from which I respectfully dissent.

In my opinion, the record in this case amply supports the trial court's ruling and establishes that the trial court properly exercised its discretion in imposing the exclusion sanction of Crim.P. 12.1.

The majority opinion vacates the judgment of conviction and orders a remand because the trial court "failed to give any reasons for its exclusion of the alibi evidence." Maj. op. at 778. It outlines five factors, supported by four explanatory footnotes, which should guide the trial court in its ultimate determination.

We can review the record and, on the basis of that review, come to our own conclusion whether there was good cause shown to permit the alibi evidence to be introduced in spite of the defendant's noncompliance with the disclosure requirement. In my judgment, the facts set out in Part I of the majority opinion, and my reading of the record, support the trial court's ruling.

The People gave notice to the defendant concerning an alibi defense on September 29, 1977. Over a year later, on Friday, November 24, 1978, three days before the trial was to start, the defendant's attorney told the People that there might be an alibi defense but did not provide the names of alibi witnesses. On Tuesday, November 28, 1978, the defendant provided the People with the names of two alibi witnesses. On Friday morning, December 1, 1978, the defendant provided the People with the name of a third alibi witness. This information came shortly before the People rested their case at 10:55 a.m. After excusing the jury, the court considered various motions, including the People's motion to exclude testimony of alibi witnesses. The court allowed the defendant to make an offer of proof to show good cause why he waited for over one year after receiving the People's notice to provide the names of alibi witnesses.

As his offer of proof, the defendant put his investigator on the stand. The investigator testified that he was given the names of three individuals who would supposedly state that the defendant had been at a

party on the night in question and had spent that night at one of their houses. The defense counsel explained that the defendant had not informed him of an alibi defense until approximately a week before trial.

The People pointed out that the nature of the alibi defense is such that a defendant should usually know that he was somewhere else at the time in question, and often he should know who he was with. Further, even though defense counsel may have disclosed the defense shortly after learning of it, no explanation was offered by the defendant as to why he waited until one week before trial to disclose the defense to his counsel, and the lack of compliance should be attributed to the defendant as well as his attorney.

The People also pointed out that they had not been able to interview the witnesses until that morning, December 1, and that the remedy for noncompliance with Crim.P. 12.1 is exclusion. They further contended that a continuance would be prejudicial because of speedy trial problems, and because they had out-of-state witnesses.

After hearing the arguments on both sides, the court granted the People's motion to exclude the testimony of alibi witnesses. Although the court did not state its reasons for the ruling, the record demonstrates that the factors listed in the majority opinion were brought to the trial court's attention. I do not believe it is necessary for adequate appellate review to remand the case and require that the trial judge recite the factors supporting his decision.

Thus, based upon the evidence submitted to the trial court, I would affirm the trial court's ruling and reach the other issues raised by the defendant in this case. *See* Maj. op. at 769 n. 1.

I am authorized to say that Chief Justice ERICKSON joins me in the concurrence and dissent.