**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Barry L. LOWE, Defendant–Appellant.**

**No. 96CA2041.**

Colorado Court of Appeals,
Div. V.

May 28, 1998.

Rehearing Denied July 16, 1998.

Certiorari Denied Dec. 21, 1998.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S.1997.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Miles D. Madorin, Special Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Multz, Salmon & Lipton, Donna A. Salmon, Grand Junction, Colorado, for Defendant–Appellant

Opinion by Judge TAUBMAN.

Defendant, Barry L. Lowe, appeals from the judgment of conviction entered on a jury verdict finding him guilty of criminal mischief and cruelty to animals. Defendant also appeals from the trial court's denial of his motion for a new trial. We affirm.

Defendant was tried and convicted on August 28, 1996, for crimes related to the slaying of a breeding stallion owned by defendant's mother-in-law. Defendant appealed those convictions. While that appeal was pending, he filed a motion for a new trial based upon newly discovered evidence. Pursuant to a limited remand, the trial court held a hearing on defendant's motion and then denied it.

## I.

Defendant contends that, by allowing the prosecution to use his notices of alibi for impeachment purposes, the trial court violated his Fifth Amendment right against self-incrimination and the policies and purposes of Crim. P. 16 II(d). We disagree.

At the outset, we note the prosecution's contention that defendant waived the aforementioned objections at trial and that, therefore, we should review defendant's challenges under a plain error standard. Because we find no error, we need not address this contention.

### A.

Defendant contends that the trial court violated his Fifth Amendment right against self-incrimination by allowing the prosecutor to impeach defendant with his notice of alibi. We disagree.

Under the Fifth Amendment, defendant had the right to refuse to take the witness stand in his or her own behalf. However, a defendant electing to take the stand is subject to cross-examination to the same extent as any other witness. Cross-examination in an effort to impeach the defendant does not violate his or her Fifth Amendment privilege against self-incrimination. *People v. Thiery*, 780 P.2d 8 (Colo.App. 1989).

Further, when a defendant waives his or her right not to testify at trial, the defendant's credibility is placed in issue to the same extent as that of any other witness. Evidence of a prior inconsistent statement is therefore admissible against the defendant if not protected by any claim of privilege. *People v. Lambert*, 40 Colo.App. 84, 572 P.2d 847 (1977).

Statements by counsel regarding the general nature of the defense are within the scope of the attorney's employment. Therefore, such statements may be considered an admission by the attorney imputed to the defendant and, thus, are admissible to impeach a defendant's testimony. *State v.*

*Dault,* 19 Wash.App. 709, 578 P.2d 43 (1978); 4 J. Wigmore, *Evidence* § 1063 (1972).

Here, defendant knowingly waived his Fifth Amendment privilege and, therefore, was subject to cross-examination concerning the inconsistencies among his first notice of alibi, his amended notice of alibi, and his in-court testimony. Thus, we conclude that the trial court did not violate defendant's Fifth Amendment rights by allowing the prosecutor to use the notices of alibi for impeachment when defendant testified inconsistently with the information contained in such notices.

### B.

■ Next, relying on *People v. Hampton,* 696 P.2d 765 (Colo.1985), defendant contends that the trial court violated Crim. P. 16 II(d) by allowing the prosecutor to use the notices of alibi to impeach defendant. We do not agree.

The purpose of Crim. P. 16(II)(d) is to prevent unfair surprise to the prosecution and enhance the overall reliability of the fact finding process. Early disclosure pursuant to the rule should not be used to abridge an accused's right to present evidence in his or her defense, nor punish a defendant for mere technical errors or omissions. *People v. Hampton, supra.*

In *Hampton,* the supreme court concluded that Crim. P. 12.1, the predecessor to Crim. P. 16 II(d), required the defendant to disclose to the prosecutor an intent to use an alibi as a defense at trial. The *Hampton* court, in its discussion of the reasonableness of the obligation of disclosure, concluded: "If [the defendant] elects to give notice and subsequently decides not to offer alibi evidence at trial, the notice of alibi may not be the subject of examination or comment at trial." *People v. Hampton, supra,* 696 P.2d at 777. It is this statement that defendant relies upon for his assertion that the trial court erred in allowing the prosecution to use the notices of alibi to impeach his credibility.

*People v. Hampton, supra,* is distinguishable from the circumstances present here. The *Hampton* court limited only the prosecution's ability to comment on information con-tained in the notice of alibi where the defendant disclosed an intent to comport with the notice of alibi requirements of Crim. P. 16 II(d) but ultimately did not offer any alibi evidence.

In contrast, here, defendant presented alibi evidence at trial and further opened the door to cross-examination concerning his version of the events when he testified in a manner inconsistent with his notices of alibi.

■ Thus, there was no error, much less plain error, in allowing the prosecutor to use defendant's notices of alibi as prior inconsistent statements to impeach his credibility. This conclusion is consistent with the purposes of Crim. P. 16 II(d) and does not punish a defendant for a mere technical error. As noted, notices of alibi are admissible only as a prior inconsistent statement when a defendant testifies at trial in a manner inconsistent with such notices.

### II.

Defendant next contends the trial court erred in denying his motion to dismiss based on the prosecutor's failure to disclose that its expert had expanded his estimate of the time when the horse was stabbed. According to defendant, this failure to disclose violated Crim. P. 16 I(a)(1)(III), and resulted in unfair prejudice because he was unable to present alibi witnesses to account for his whereabouts for the periods not within the original estimate. Defendant likewise contends that the trial court erred in denying his motion for a new trial based upon newly discovered witnesses who were willing to testify to defendant's whereabouts for the periods not within the original estimate of when the crimes occurred. We disagree with both contentions.

### A.

■ Crim. P. 16 I(a)(1)(III) requires that the prosecution make available to a defendant material within its control or possession, including any reports or statements of experts made in connection with a particular case. However, failure to comply with discovery rules does not require dismissal by the trial court absent a demonstration of

prejudice to the defendant. *Salazar v. People*, 870 P.2d 1215 (Colo.1994).

Here, because we conclude there was no showing of prejudice, we need not decide whether the additional information which the prosecution expert, a veterinarian, gave to the prosecutor was discoverable.

At the preliminary hearing, a detective testified that the stabbing had occurred between 1:00 and 2:00 a.m. on July 31, 1995. The detective's estimate was based upon testimony that the horse had died at approximately 8:00 a.m. on July 31, 1995, and the veterinarian's opinion that it would have taken the horse about six hours to die from the wound.

However, shortly before trial, during an interview with the prosecutor, the veterinarian estimated that it would have taken the horse eight to twelve hours to die from the wound. It is undisputed that the prosecutor did not disclose this new time estimate to defense counsel prior to trial.

At trial, the veterinarian testified without objection that consistent with its wound, the horse would have survived between six and twenty-four hours, and most likely would have survived eight to twelve hours after the stabbing. Defense counsel did not cross-examine the expert witness regarding this newly-expanded estimate but, rather, after the prosecution rested, requested that the trial court dismiss the case.

The trial court, in denying the motion to dismiss, emphasized that defendant had not shown prejudice from the prosecutor's failure to inform defense counsel of the expanded estimate of the time frame during which the stabbing could have occurred. The trial court concluded:

> The evidence itself from [defendant] and from other sources indicated a window of time, which would have been sufficient for [defendant] ... to commit the crime.... Now my real point here is [defendant] identified no other people during this period of time that might support an alibi. Even with the current motion there is no suggestion that there are certain people that he could have presented and was prevented from presenting because he didn't have adequate notice.

The trial court's ruling is supported by the record. Specifically, defendant testified that he was alone from 11:35 p.m. to 12:45 a.m. on the night in question. Further, the record reveals that the prosecution did not argue that the crime had occurred as early as 8:00 p.m. on July 30, 1995, but, rather, focused on the window of opportunity established by defendant's own testimony. Under these circumstances, even if the expert's expanded estimate of when the horse was stabbed was discoverable pursuant to Crim. P. 16 I(a)(1)(III), defendant failed to demonstrate any prejudice from the prosecutor's nondisclosure. Therefore, the trial court did not err in denying defendant's motion to dismiss.

## B.

A motion for a new trial based upon newly discovered evidence is not looked on with favor, and a denial of such a motion will not be overturned absent a showing of clear abuse of discretion. *People v. Gutierrez*, 622 P.2d 547 (Colo.1981); *People v. Williams*, 827 P.2d 612 (Colo.App.1992).

To succeed on a motion for a new trial on this ground, a defendant must show that: (1) the evidence was discovered after the trial; (2) defendant exercised due diligence to discover all possible evidence favorable to him or her prior to and during trial; (3) the newly discovered evidence is material to the issues involved, and not merely cumulative or impeaching; and (4) the newly discovered evidence would probably produce an acquittal on retrial. *People v. Gutierrez, supra.*

At the hearing on defendant's motion for a new trial based on newly discovered evidence, he presented alibi witnesses to attest to his whereabouts for the period covered by the expanded estimate of when the crimes had occurred. The affidavits that defendant submitted with his motion stated, contrary to his testimony in court, that he had arrived at a bar between 6:30 and 7:00 p.m. on July 30, 1995, and had remained there until midnight. However, during the hearing defendant conceded that he could not

have arrived at the bar that early and characterized any person making such statement as, "inaccurate, not paying attention to a watch."

Additional conflicting testimony came from another alibi witness who testified that defendant had left the bar where she was bartending between 10:30 and 11:00 p.m. However, in her earlier affidavit, the same witness had stated that defendant remained at the bar until midnight.

In denying the motion, the trial court noted that, because the prosecution did not argue that the crime had occurred as early as 8:00 p.m. on July 30, defendant's new evidence concerning his whereabouts in the early evening hours on that date was not material. Further, the court emphasized that other portions of the new alibi testimony actually contradicted defendant's testimony. It also found that such evidence would not have changed the result.

There is record support for these findings, and we conclude that the trial court did not abuse its discretion in denying defendant's motion for a new trial based upon newly discovered evidence.

### III.

■ Defendant lastly contends that the trial court erred in denying his motion for a mistrial when a detective testified that the name "Lowe" appeared in the sheriff's department records 26 times. We are not persuaded.

■ The determination of whether to declare a mistrial is within the sound discretion of the trial court and should not be disturbed absent an abuse of discretion. *People v. Jones*, 851 P.2d 247 (Colo.App.1993).

■ Further, a mistrial is a drastic remedy that is warranted only if the prejudice to the accused is too substantial to be remedied by other means. *People v. Baca*, 852 P.2d 1302 (Colo.App.1992).

Here, the officer did not testify as to any criminal activity of the defendant. The record reveals that the prosecutor, to rebut any inference that the weapon used to kill the horse may have been stolen from defendant's

residence, asked the detective: "During the year 1995, did the defendant ... report any thefts from the property on 3300 Road, according to the records in the Sheriff's Department?" The detective replied in the negative and provided the additional information described above.

Defendant concedes that the challenged portion of the officer's response was unsolicited by the prosecutor and that the prosecutor stopped the witness from completing the statement. Nevertheless, defense counsel immediately requested that the trial court declare a mistrial. The trial court declined, but, after conferring with defense counsel, instructed the jurors to disregard the officer's last statement and not to speculate as to its meaning.

Absent any evidence to the contrary, we must presume that such instruction cured the prejudice, if any, to defendant. *See People v. Baca, supra.*

Judgment affirmed.

ROTHENBERG and VOGT, JJ., concur.